**Teri Grayson WOLLENBURG, Plaintiff–Appellant,**

v.

**COMTECH MANUFACTURING CO., Defendant–Appellee.**

**No. 99–1714.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1999.

Decided Jan. 20, 2000.

975

Eric K. Graf (argued), Madison, WI, for Plaintiff–Appellant.

Cari L. Westerhof (argued), Ruder, Ware & Michler, Wausau, WI, for Defendant–Appellee.

Before BAUER, EASTERBROOK, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

This case raises an unlikely question: Is a Merry Maid or a meat manager more qualified to become a factory supervisor?

The plaintiff, Teri Grayson Wollenburg, began working in March 1994 as a production employee earning $8.56 per hour for the defendant employer, Comtech Manufacturing Company, a Wisconsin firm that makes automobile engine components. In November 1995 she became a production supervisor on the second shift, earning $11.00 an hour. But there were problems on Wollenburg's watch. She once neglected to turn in time cards promptly, resulting in delayed payment of overtime wages for the workers and an oral warning for Wollenburg. She twice failed to address quality control problems, requiring the quality assurance manager to step in later to straighten out the situation.

Comtech fired Wollenburg in May 1996. She filed suit, contending that because of her gender she was (1) paid less than her male counterparts in violation of the Equal Pay Act, 29 U.S.C. § 206(d), and (2) fired in violation of Title VII, 42 U.S.C. § 2000e et seq. Comtech won summary judgment on the Equal Pay Act claim and won a jury verdict on the Title VII claim. Wollenburg appeals both decisions.

This court reviews a grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party. Bragg v.Navistar Int'l Transp. Corp., 164 F.3d 373, 376(7th Cir.1998). Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). Material facts are those which might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine if a reasonable trier of fact could find in favor of the nonmoving party. Id.

■ The Equal Pay Act, an amendment to the Fair Labor Standards Act, forbids paying workers of one sex less than workers of the opposite sex for equal work that requires equal skill, effort, and responsibility and which is performed under similar working conditions, except where the differential is due to a seniority system, a merit system, a system which measures quantity or quality of production, or a factor other than sex. 29 U.S.C. § 206(d)(1). To establish a prima facie Equal Pay Act case, the plaintiff must show (1) that different wages were paid to employees of the opposite sex, (2) that the employees do equal work which requires equal skill, effort, and responsibility, and (3) that the employees have similar working conditions. Bragg, 164 F.3d at 378.

Wollenburg had one female and three male counterparts during the time she was the second shift production supervisor at Comtech: Cole Meyer, who had 10 years of manufacturing supervisory experience, earned $12.00 per hour as first shift production supervisor. Richard Demaa, who had 5 years of manufacturing supervisory experience, earned $13.00 per hour as third shift production supervisor. Delaine Recheck, who had 9 years of production and supervisory experience at Comtech, earned $12.75 per hour when she replaced Demaa as third shift production supervisor in June 1995. She was promoted to quality manager in December 1995. Ken Neuman, who had 26 years of experience as a meat manager in a grocery store when he was hired at Comtech by his son's future mother-in-law, earned $11.50 per hour when he replaced Recheck as the third shift supervisor in December 1995. Because Meyer, Demaa, and Neuman were paid higher wages for a job that required equal skill, effort, and responsibility and that involved similar working conditions, Wollenburg made her prima facie case.

Once a plaintiff makes a prima facie case, the employer bears the burden of persuasion of showing that the pay disparity stems from a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a differential based on any other factor other than sex. *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1462 (7th Cir. 1994). Even if a man and woman are doing the same work for different pay, there is no violation if the wage difference stems from a factor other than gender. *Lindale v. Tokheim Corp.*, 145 F.3d 953, 957 (7th Cir.1998). Experience is a nondiscriminatory reason for wage disparity. *Fallon v. Illinois*, 882 F.2d 1206, 1212 (7th Cir.1989); *Wu v. Thomas*, 847 F.2d 1480, 1485–86 (11th Cir.1988).

Comtech says it paid the male supervisors more because they had more relevant experience. Wollenburg does not dispute that Meyer and Demaa's supervisory experience in manufacturing justified their higher wages. She does challenge, however, whether Neuman's 26 years of experience as a grocery store meat manager warranted his being paid 50 cents more per hour than she. Wollenburg notes that she, too, had supervisory experience while managing a Merry Maid subfranchise for 4 years. Managing a cleaning service and managing a meat market seem equally far afield from overseeing an automobile engine parts manufacturing line. Ultimately, however, we need not reach the pressing question of whether a Merry Maid manager or a meat market manager is better prepared to become a factory production supervisor.

Neuman had 26 years of unrelated supervisory experience to Wollenburg's 4 years of unrelated supervisory experience. Whether Comtech acted wisely in paying Neuman more because of his lengthier supervisory experience in an unrelated job is not the issue; whether Neuman really deserved to be paid more is not the issue; whether Comtech should have given Wollenburg more credit for her extensive non-supervisory manufacturing experience and her associate degree in management is not the issue. *See Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir.1997) ("we do not sit as a kind of 'super-personnel department' weighing the prudence of employment decisions made by firms charged with employment discrimination"). The point is that Neuman had more supervisory experience, that was the reason Comtech gave for the wage disparity, and experience is a legitimate, nondiscriminatory reason.

Because there was no genuine issue of material fact over the validity of Comtech's articulated reason that experience was why Meyer, Demaa, and Neuman (not to mention Recheck) were paid more than Wollenburg, the district court's order granting Comtech's motion for summary judgment on the Equal Pay Act claim was appropriate.

Winning appellate reversal of a summary judgment order against the plaintiff

in an employment discrimination case is difficult enough, as shown by the discussion we just had on the equal pay claim. *See Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago,* 104 F.3d 1004, 1006–07 (7th Cir.1997) (noting that this circuit affirmed summary judgment for the employer in 21 of 26 employment discrimination cases in 1996). Winning appellate reversal after a jury verdict against a plaintiff in an employment discrimination case is even tougher. *See Roy v. Austin Co.,* 194 F.3d 840, 842 (7th Cir. 1999). Wollenburg asks us to erase the jury's verdict in Comtech's favor on the Title VII claim because the district court quashed her last-minute subpoena and barred certain evidence.

■■ Evidentiary rulings are reviewed for abuse of discretion. *See Trident Inv. Mgt., Inc. v. Amoco Oil Co.,* 194 F.3d 772, 780 (7th Cir.1999)(evidentiary rulings in general are reviewed for abuse of discretion); *In re Maurice,* 21 F.3d 767, 772–73 (7th Cir.1994) (refusing to permit certain evidence because pretrial schedule was violated is reviewed for abuse of discretion); *United States v. Ashman,* 979 F.2d 469, 495 (7thCir.1992) (granting a motion to quash a subpoena is reviewed for abuse of discretion). An error by the trial court does not warrant reversal unless the error affected the essential fairness of the trial. *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 553, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).

■ On July 1, 1998, Judge Shabaz ordered that discovery be completed by December 1, 1998. The trial was scheduled to begin on Monday, February 22, 1999. On February 19—the Friday before trial— Wollenburg served Comtech with a subpoena duces tecum demanding that it produce any copies it held of daily notes Ms. Wollenburg submitted to the company during her employment. This was the first time Wollenburg requested or made any reference to these alleged notes. Judge Shabaz quashed the subpoena and forbade Wollenburg from making any reference to them during the trial.

When we say, as we did just a moment ago, that we review rulings of this sort for an abuse of discretion, we mean there is a wide range of acceptable responses that a district court can take in situations such as the one presented here by the eleventh hour subpoena. Some judges, recognizing that the world of litigation is not perfect, might grant a request like this, believing that to do so will better ensure a just result at the trial. Other judges take a stricter approach. Here is how Judge Shabaz handled the situation and a defense motion in limine which followed:

JUDGE SHABAZ: I want to make it reasonably clear as I can. Those exhibits will not be referred to. They will not be offered. They will not be part of the record. The untimeliness of the subpoena for these matters is addressed by the Court and as it relates to these proposed new exhibits, it is quashed. And the instructions of this Court are very clear as to the manner in which we're going to proceed and I'm not going to change it based upon your inexperience and inability to follow those procedures, Mr. Graf [Wollenburg's counsel], nor do I plan to change any other format that this Court has established over the past almost 18 years as a result of perhaps your failure to understand what it is I expect of counsel.

Anything further either counsel wish to bring to the Court's attention?

MS. WESTERHOF [Cari Westerhof, counsel for Comtech]: Yes, one other thing, Your Honor. You have previously—

JUDGE SHABAZ: You'll have to either speak from counsel table—I don't allow the roaming minstrels in this court either. You either speak from counsel table or you get a podium.

MS. WESTERHOF: Sorry, Your Honor.

JUDGE SHABAZ: These are matters that should have been brought to the Court's attention on Friday, if indeed you were aware of them, and I believe

that this experiment to have a telephone conference instead of have you folks appear will be probably the last time we're going to do it as a result of the continued motions which you're seeking at this time, Ms. Westerhof.

MS. WESTERHOF: You have previously ruled in this case—well, you've dismissed the plaintiff's claim under the Equal Pay Act. And I believe—I have a motion in limine to ask the Court to order that there be no reference to the plaintiff's rate of pay in comparison with the other employees' rates of pay.

You have dismissed her equal pay claim on the basis that there's no evidence to support her claim that her pay was evidence of discrimination. That issue has been decided and I don't believe it would be appropriate for that issue to be relitigated here today.

JUDGE SHABAZ: Mr. Graf.

MR. GRAF: Yes, sir. I'm fairly surprised by this at the last minute.

JUDGE SHABAZ: So am I and it's denied. This is not the purpose of—I gave you a schedule in which to file motions pending trial. You have delayed in doing that and you're not going to do it at this time, even if there were merit to it, and there isn't. And so the motion in limine is denied.

Anything further?

MS. WESTERHOF: No, Your Honor.

■■■ The judge's response, it seems to us, was rather gruff and rigid. But we deal here with a deferential standard of review, and so we underscore that finding no *abuse* of discretion is not the same thing as finding—both as to manner and merits—that discretion was exercised wisely.

Wollenburg says on appeal that Judge Shabaz's ruling "fatally undermined" and "effectively gutted" her case. To begin with, if the notes truly were the guts of her case, Wollenburg might have asked for these guts earlier than on the eve of trial. Also, just because a ruling undermines a party's case doesn't mean the ruling is wrong. In the criminal context, for example, sometimes the exclusionary rule requires throwing out a key piece of evidence or the Fifth Amendment requires suppressing a statement. When judges make these orders the prosecution's case may be eviscerated, but this is called following the law—not reversible error.

Fed.R.Civ.P. 16(b) authorizes district judges to set a schedule that limits the time to file motions and to complete discovery. These deadlines "shall not be modified except upon a showing of good cause." Wollenburg really offered no good cause for her tardy request for the notes. Judge Shabaz, therefore, was within his discretion in granting Comtech's motion to quash the subpoena.

Judge Shabaz also was within his discretion to prohibit reference to the alleged notes during the trial. "Two purposes for requiring the parties to comply with a pre-hearing (or pretrial) order include identifying witnesses and resolving evidentiary disputes in advance of trial, thus narrowing the issues and expediting the trial. When one party fails to comply with a court's pre-hearing order without justifiable excuse, thus frustrating the purposes of the pre-hearing order, the court is certainly within its authority to prohibit that party from introducing witnesses or evidence as a sanction." *Maurice*, 21 F.3d at 773.

■■■ Finally, the suggestion that Judge Shabaz's ruling on the subpoena fatally undermined Wollenburg's case is far-fetched. Wollenburg claims the notes were highly probative because they created a contemporaneous record of her interactions with Comtech's supervisors and other employees. However, the content of the notes would have been inadmissible hearsay under Fed.R.Evid. 801(c). Though Judge Shabaz banned referring to the notes, Wollenburg was free to testify directly and to question other witnesses about the actual conversations and meetings on which the alleged notes were based. Thus, even if the ruling on the

notes had been erroneous, the error would have been harmless.

The grant of summary judgment on the Equal Pay Act claim and the jury verdict on the Title VII claim are affirmed.