In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2044

LAURIE KAY HOWARD,

Plaintiff-Appellant,

v.

LEAR CORPORATION EEDS AND INTERIORS,
formerly known as United Technologies
Automotive, Incorporated,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:99-CV-104--William C. Lee, Chief Judge.

Argued November 2, 2000--Decided December 12, 2000

Before MANION, KANNE, and EVANS, Circuit Judges.

EVANS, Circuit Judge.  Laurie Kay Howard worked as a secretary and then a human resources coordinator for United Technologies Automotive ("UTA") in its Fort Wayne, Indiana, plant until it closed in 1997./1 She contends that UTA violated the Equal Pay Act and Title VII of the Civil Rights Act of 1964 by failing to promote her to the position of human resources manager. Arguing that the small Fort Wayne plant did not have nor need a manager of human resources, UTA filed for summary judgment. The district court granted UTA's motion on both counts, finding that Howard failed to establish that her work responsibilities were substantially similar to the work performed by human resources managers at other UTA plants and that she failed to allege a prima facie Title VII case of sex discrimination. Howard appeals the ruling on both claims.

The Fort Wayne plant was one of UTA's smaller facilities, employing only 53 workers in 1996. The plant was not unionized. It was primarily a nonproduction research and development center employing only salaried workers. Another UTA facility was located 30 miles away in Huntington, Indiana. Because of its size and proximity to the Huntington plant, the Fort Wayne facility did not have separate human resources, plant, quality, or

materials managers. Jim Price served as the human resources manager for both the Huntington and Fort Wayne plants.

Howard began working in the Fort Wayne facility in December 1992 as a secretary with an annual salary of $19,776. The bulk of her responsibilities included purchasing, petty cash disbursements, and clerical responsibilities for employee health and safety issues. By 1993 her responsibilities had increased. At the time, the head of the Fort Wayne plant, Gene Daley, referred to her as the "lead person" for environmental health and safety issues. She was briefed on OSHA matters and was listed as the "Health & Safety Professional" in a company phone directory. Of the 53 workers in the plant, Howard provided administrative support for roughly 40 employees. The remaining employees reported employment concerns to UTA's headquarters in Dearborn, Michigan.

In March 1994 Price recommended that Howard be promoted to human resources coordinator. The promotion went into effect in July 1994, increasing her salary to $22,728. In 1995 Roger Holtzinger replaced Daley as the head of the plant./2 In August 1996 Holtzinger wrote to UTA officials recommending Howard for a promotion to human resource manager./3 UTA decided not to promote Howard, noting that Mr. Price served as the HR manager for both the Huntington and Fort Wayne plants. UTA never created a separate managerial position at Fort Wayne, nor did it seek applicants for such a position. In March 1997 UTA permanently shut down the Fort Wayne facility.

We review a grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party. Wollenburg v. Comtech Mfg., 201 F.3d 973, 975 (7th Cir. 2000). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The Equal Pay Act, an amendment to the Fair Labor Standards Act, forbids paying workers of one sex less than workers of the opposite sex for equal work that requires equal skill, effort, and responsibility, unless the pay differential is justified by factors other than sex, such as seniority, merit, experience, or education. See Wollenburg, 201 F.3d at 975. To survive summary judgment Howard must establish a prima facie case of sex-based wage discrimination by showing: "(1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort, and

responsibility; and (3) that the employees have similar working conditions." Bragg v. Navistar Int'l Transp. Corp., 164 F.3d 373, 378 (7th Cir. 1998). Once the prima facie case is established, the burden of persuasion shifts to the employer to prove that the disparity is justified by one of four affirmative defenses: (1) a merit system; (2) a seniority system; (3) a system which measures earnings by quantity or quality of production; and (4) a differential based on any factor other than sex. 29 U.S.C. sec. 206(d)(1); see also Varner v. Illinois State Univ., 226 F.3d 927, 932 (7th Cir. 2000).

UTA contends that Howard failed to satisfy the second element by proving that her male counterparts, employed as HR managers at larger plants, performed equal work. To establish the equal work element, Howard must show that her job and the male employee's job involved a "common core of tasks" or that "a significant portion of the two jobs is identical." Fallon v. State of Illinois, 882 F.2d 1206, 1209 (7th Cir. 1989) (citations omitted). "If a plaintiff establishes this 'common core,' the question then becomes whether any additional tasks make the jobs 'substantially different.'" Id. "Whether two jobs require equal skill, effort, and responsibility, and are performed under similar working conditions is a factual determination." Id. at 1208 (citations omitted). We will overturn such a finding only if it is clearly erroneous.

In making her case, Howard contends that although she lacked the title of HR manager, she performed all the functions of the position. Moreover, she argues that Holtzinger, who was in charge of the Fort Wayne plant, recognized that she was the de facto HR manager in his letter recommending her for promotion.

Even assuming that Howard performed the same "common core of tasks" as HR managers in other plants, her male counterparts were responsible for additional duties, requiring greater skill and effort./4 Howard compared her job to the positions held by male HR managers at UTA's Traverse City, Michigan, and Peru, Indiana, production plants. In 1996 these plants employed 127 and 268 workers, respectively. These were production facilities which employed both salaried and hourly workers, and the Peru facility was unionized. The HR managers in these two plants were required to shoulder greater responsibilities. They had more employees to train, union grievances to resolve, hourly wages to track, and a greater number of personnel records to monitor and maintain. In contrast, Howard was responsible for only 40 salaried workers in a nonunion, nonproduction plant. The

additional skill, effort, and headache involved in managing three to six times the number of workers in a more complex employment environment rendered the HR positions in the Traverse City and Peru plants substantially different from the job Howard performed in Fort Wayne. See Krenik v. County of Le Sueur, 47 F.3d 953, 961 (8th Cir. 1995) (position of maintenance worker and maintenance engineer unequal where engineer carried additional responsibility of supervising assistant and serving as department head); see also Stanley v. University of S. Cal., 13 F.3d 1313, 1322-23 (9th Cir. 1994) (pay differential between coaches of men's and women's basketball teams justified where men's coach responsible for more substantial public relations and promotional duties given that men's team generated 90 times greater revenue). Thus, Howard has failed to establish that she received less pay for equal work.

Howard also fails to establish a claim of sex discrimination. To establish a prima facie case of failure to promote, Howard must show that (1) she is a member of a protected class; (2) she applied for, and was qualified for an open position; (3) she was rejected; and (4) the employer filled the position with a person not in her protected class, or the position remained open. Mills v. Health Care Serv. Corp., 171 F.3d 450, 454 (7th Cir. 1999). Even were we to assume that Howard was qualified to be an HR manager, she fails to establish the second and fourth prongs. She fails to establish that a promotional opportunity was available and that the promotion she sought was given to a male applicant or, alternatively, left unassigned. Because of its size and proximity to the Huntington plant, the Fort Wayne plant never had its own HR manager, none was sought by the company, nor was such a position created after Howard was denied the promotion. Overall, the Fort Wayne plant was low on managers. The facility did not have a separate plant manager, quality manager, or materials manager. Looking at other UTA plants, the absence of a HR manager at Fort Wayne does not stand out as mysterious or suspicious. UTA's three smallest domestic plants, including Fort Wayne, did not have separate HR managers. Moreover, in 1996 no facility with fewer than 68 workers had created a managerial position for handling human resource issues.

The absence of any evidence of pretext is an alternative basis for dismissing Howard's claim. Even assuming Howard were able to make a prima facie showing of sex discrimination, her claim fails because she presents no evidence that UTA's proffered reason for denying her promotion--that it did not need a separate HR manager in a small

plant located near another facility--was pretextual. Ghosh v. Indiana Dep't of Envtl. Mgmt., 192 F.3d 1087, 1091 (7th Cir. 1999) (without considering prima facie case, court may dismiss for failure to establish that employer's nondiscriminatory justification was pretextual). In fact, Howard presents no evidence suggesting that the real reason UTA refused to create a managerial position at Fort Wayne was related to her gender. See Turgeon v. Premark Int'l, Inc., 87 F.3d 218, 221 (7th Cir. 1996) ("plaintiff must show that gender played a part in an employment decision"). Nor does she offer any circumstantial evidence of gender bias, suggesting that UTA was reluctant to promote women. Both the Traverse City and Peru plants currently employ female HR managers, and UTA employs 14 female HR managers nationwide.

   For the reasons set forth above, we affirm the decision of the district court.

/1 Lear Corporation acquired UTA on May 4, 1999. Thus, Lear Corporation is now the proper appellee in this suit. However, since the parties have continued to refer to the appellee as UTA, for the sake of clarity we will follow their lead.
/2 Holtzinger's title was manufacturing/engineering manager, a position with fewer benefits than the plant manager designation.

/3 Holtzinger's letter read:

   As discussed with you, concerning Laurie Howard's performance and abilities to perform the responsibilities of the Human Resources Manager here at Fort Wayne, I am submitting her KJR evaluation and request for promotion.

   My belief is she had full-time responsibilities as Human Resources Manager and EH&S (environmental health and safety) Coordinator, and deserves this consideration for her hard work.

/4 This point is vigorously opposed by UTA, which argues that Howard's responsibilities were limited to that of a HR coordinator. Specifically, UTA contends that Howard was not authorized to hire, supervise, evaluate, or fire employees. Allegedly she only had managerial control over temporary secretaries. However, we need not resolve this factual dispute. Viewing the matter in the light most favorable to the nonmoving party, and assuming that Howard performed the duties that would have been

assigned to a HR manager at Fort Wayne, we still
find that she fails to make a showing of equal
work.