Peter A. WEISS, Plaintiff,

v.

CAMPAGNA–TURANO BAKERIES, INC., Defendant.

No. 98 C 6373.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 20, 1999.

Herbert H. Victor, Karrie L. Dowd, Chicago, IL, Margaret Megan O'Malley, Attorney at Law, Chicago, IL, for Plaintiff.

Julian D. Schreiber, Borovsky & Ehrlich, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Peter Weiss sues Campagna–Turano Bakeries, Inc. ("Turano") claiming that he was demoted because of his age, in violation of 29 U.S.C. § 621 *et seq.* ("ADEA"), and his religion, in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII"). Turano seeks summary judgment on the grounds that Weiss cannot prove that he was meeting Turano's legitimate performance expectations or that similarly situated younger or non-Jewish employees were treated more favorably. Weiss submits no evidence other than his own self-serving affidavit that he was performing as expected. Turano, on the other hand, has presented numerous affidavits from customers and supervisors dissatisfied with Weiss' performance as a bread deliveryman. After careful review of the record, we conclude that Weiss cannot establish a prima facie case of discrimination under either ADEA or Title VII and grant Turano's summary judgment motion.

## RELEVANT FACTS

Given the procedural posture of this case, we construe the facts in the light most favorable to Weiss and, when the parties' facts conflict, we assume those presented by Weiss are true. *See Hoffman v. MCA, Inc.,* 144 F.3d 1117, 1121 (7th Cir.1998) (reciting summary judgment standard). Our recital of the facts is guided by these standards: unless important to our ultimate analysis, we do not note factual disputes. Our approach, however, does not imply a lack of such disputes.

In January 1996, Mickey Carbone, a Turano District Manager, hired Weiss to deliver bread on Route 59, which encompassed the South Loop and part of Greek Town. When hired, Weiss was 45 years old. Carbone trained Weiss by riding the route with him and giving tips on efficient delivery techniques. For example, Carbone instructed Weiss to assemble his orders at the delivery dock and organize the truck by each customer's order. Additionally, Carbone instructed Weiss to check off products on the customer's invoice when taking the purchase from the truck to the customer so that Weiss would not forget part of the order and waste time having to make two trips.

During August 1997, Turano reorganized its management structure by reducing the number of district managers from

six to four and creating two "training management" positions. Carbone became a training manager and Sam Blasi was promoted from a route driver (the same position held by Weiss) to district manager. Blasi took over supervision of Route 59. Prior to the restructuring, Weiss had never received a customer complaint.

In early September 1997, Weiss asked Blasi if he could take October 11 off from work to celebrate Yom Kippur. Prior to the request, which Blasi denied, Blasi did not know that Weiss was Jewish. According to Weiss, immediately after the request was denied, Blasi began giving Weiss the cold shoulder. At his deposition, however, Weiss was unable to describe any specific facts demonstrating Blasi's alleged coldness.

On September 14, Blasi transferred seven new customers to Weiss' route. The parties dispute whether Weiss requested additional customers, thereby increasing his commission payments. In any event, they agree that customer complaints about Weiss' late deliveries began during the same week Weiss' customer load increased. Specifically, Moses Tillawi, the owner of Chicago Style Sub, and Robert Kenney, the owner of Clark Street Deli, began phoning Turano to complain about late deliveries. Tillawi and Kenney attest that, between September 1997 and January 1998, they complained about Weiss at least once a week, and frequently more often. (R. 40, Turano Exs. 11A, Tillawi Aff., and 16, Kenney Aff.)

In response to the complaints, on September 30, Blasi moved Weiss up in the "bread line" so that Weiss could start loading his truck 95 minutes earlier and, presumably, deliver the bread in a timely manner. Blasi also tinkered with the route: he added two smaller customers in the Loop and a Dominick's, which opened in October 1997, and removed four customers located in Greek Town. Blasi reasoned that Weiss' new route would be more compact; it would be easier to service Dominick's, a single stop with a large order, than smaller customers; and Weiss wouldn't

lose any commission due to the size of Dominick's order. Two other Turano drivers absorbed Weiss' former customers without any effect on the timeliness of their deliveries.

The complaints, however, did not abate. Instead, they grew: one of Weiss' new customers, Cherub's, began complaining about Weiss' late deliveries. Jeff Maltby, the Turano salesman who actually received the complaints from Cherub's, told Blasi that he was reluctant to solicit new business on Route 59 because Weiss couldn't service existing customers properly. He also informed Blasi that a restaurant named Zorba's refused to do business with Turano so long as Weiss was responsible for its deliveries.

According to Weiss, on November 10, Blasi told him that he would be taken off of Route 59. Specifically, Weiss claims that Blasi told him, "We're taking you off the route because we're going to expand the route, and we're going to give the route to a younger, faster man." (R. 49, Weiss Ex. K, Weiss Dep. at 41.) Blasi disputes this allegation: he claims he never said anything about hiring a younger man, did not make the decision to demote Weiss until the middle of December, and did not tell Weiss about his decision until after Christmas.

In early December, Blasi asked Carbone, now a trainer, to ride with Weiss, which he did on December 4 and 5. Weiss says Carbone commiserated with him about the loss of his route, (id. at 64–65), but Carbone says Weiss didn't tell him about the demotion until late December, (R. 40, Turano Ex. 5, Carbone Aff. at ¶ 39). In any event, on December 4, Carbone witnessed several shortcomings in Weiss' performance, (id. at ¶¶ 19–27), and again told Weiss how to operate more efficiently. On the fifth, Carbone ran Weiss' route and shaved one and a half hours from Weiss' time. When Carbone asked Weiss why the delivery went so much more quickly Weiss replied that he did not know. (Id. at ¶ 30.) Carbone told Blasi and Ken Jan-

iszewski, Turano's vice president of sales, that Weiss was too disorganized and slow to run Route 59. He also told Blasi that he could not think of any other way to help Weiss go faster.

In January 1998, Blasi removed Weiss from Route 59 and gave him a "special route" at hourly pay. Richard Chisnick, who was 27 years old, was given Route 59. Chisnick testified that he wanted Route 59, as opposed to his old route, because the customer stops were closer together and it had a great potential for adding new customers and earning larger commissions. Weiss trained Chisnick on Route 59.

Weiss claims, on the basis of these facts, that Turano demoted him because of his age or religion. Turano maintains that it demoted Weiss because Weiss did not address his customers' complaints and because, in the face of these complaints, Turano could not add new customers on the Route, although it wanted to. Turano seeks summary judgment arguing that Weiss cannot show he was satisfying Turano's reasonable performance expectations or point to similarly situated employees who were younger or non-Jewish that were treated better than he was.

## ANALYSIS

To succeed on its summary judgment motion, Turano must show that Weiss cannot produce facts from which a reasonable jury could find in his favor. Fed.R.Civ.P. 56(c). In other words, Weiss must establish a genuine jury question on each element of his case for which he bears the burden. Weiss predominantly relies on the burden-shifting method to prove his age and religious discrimination claims, but he also makes a half-hearted attempt to set forth a direct case of age discrimination. We address each method in turn.

### A. Weiss' Indirect Proof of Age and Religious Discrimination

Under the *McDonnell Douglas* burden-shifting method of establishing a viable a discrimination claim, Weiss must demonstrate a triable issue that he was meeting Turano's legitimate expectations. *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1178 (7th Cir.1997). The only evidence produced by Weiss on this point is his own self-serving affidavit that he had resolved his customers' complaints by the end of October 1997.

■ In light of the voluminous evidence submitted by Turano that Weiss' job performance was universally considered inadequate, Weiss' affidavit is insufficient to create a material dispute. *Green v. National Steel Corp.*, 197 F.3d 894, 898 (7th Cir.1999) ("[A plaintiff's] bald assertions that she did not engage in the misbehavior alleged by the company are insufficient to create a material dispute."); *Mills v. First Fed. Sav. & Loan Assoc.*, 83 F.3d 833, 843 (7th Cir.1996) ("[A plaintiff] must do more than challenge the judgment of [his] superiors through [his] own self-interested assertions.") (quotation omitted); *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1460 (7th Cir.1994) ("An employee's self-serving statements about his ability ... are insufficient to contradict an employer's negative assessment of that ability."). Specifically, Turano submits the affidavit of two Weiss customers who declare that they complained about late deliveries at least once a week from September 1997 to January 1998; the affidavit of a Turano sales representative who said he could not add new customers to the route so long as Weiss was driving it; the affidavit of Carbone who specified numerous errors in Weiss' performance, opined that after two years it was unlikely that Weiss could improve the speed of his performance, and personally performed Weiss' route an hour and a half more quickly than did Weiss; and testimony by Blasi that Weiss' performance was inadequate. To survive summary judgment, Weiss "had to counter the company's affidavits with materials of evidentiary quality (such as affidavits or depositions)." *Green*, at 898. Because he did not, Weiss has not shown a triable issue that he was adequately performing his job.

Weiss invites us to evaluate the reasonableness of Turano's expectations. He argues that Turano should not be allowed to add ten customers to his route and then demote him because the ten additional customers slowed him down. Additionally, Weiss contends that if Turano really wanted to help him succeed, it should have removed the customers who complained rather than the four Greek Town customers. It is not our job, however, to evaluate the wisdom of Turano's business decisions; the only question we must answer is whether Turano actually expected Weiss to serve the customers assigned to his route. *Coco,* 128 F.3d at 1179 ("[I]t is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers."). There is no evidence that the demands on Route 59's driver decreased, or changed in any way, once Weiss was demoted, and no other evidence even remotely suggests that Turano's demands on Weiss were not bona fide.

In a variation of his "reasonableness" argument, Weiss contends that Blasi set him up to fail by overwhelming his route with new customers only after Blasi learned that he was Jewish. The evidence, however, shows that even after Blasi added the new customers to Route 59, Weiss' route was lighter than most of the other routes supervised by Blasi. (*See* R. 49, Weiss Ex. L, Blasi Dep. Attach. 2 (commission payroll records); R. 55, Turano Reply Ex. A, Blasi Aff. ¶ 9 and supporting attachments containing calculations of the number of customers on each route supervised by Blasi.) In any event, the lack of change to Route 59 after Weiss' departure belies Blasi's alleged invidious motive and, instead, suggests quite reasonably that Blasi wanted the route to earn more money for Turano.

Weiss' reliance on his good employment record under Carbone's supervision also must fail. The relevant decision maker is Blasi, and the relevant time period is September through December 1997. That Weiss had no customer complaints prior to Blasi's assumption of supervisory duties

over Route 59 is simply irrelevant to the issue whether he was meeting Turano's performance expectations at the time he was demoted. *Fortier v. Ameritech Mobile Communications, Inc.,* 161 F.3d 1106, 1113 (7th Cir.1998) ("Nor can [prior] evaluations, standing alone, create a genuine issue of triable fact when, as here, there have been substantial alterations in the employee's responsibilities and supervision in the intervening period.").

Because Weiss has not established a genuine issue that he was satisfying Turano's legitimate employment expectations, he cannot demonstrate a prima facie case of age or religious discrimination. For this reason, we grant Turano's summary judgment motion as to these claims.

## B. Weiss' Direct Proof of Age Discrimination

Weiss insists that his testimony that Blasi told him, in mid-November, that Route 59 was being given to a "younger, faster man" constitutes direct proof of age discrimination and creates a genuine issue for trial. Although Turano, with justification, attacks this evidence as incredible, we assume its truth and decide that the purported statement is insufficient to stave off summary judgment.

Under the direct proof method, Weiss must show that age was the determining factor in Blasi's decision to demote him: he must show that "but for" his age Turano would not have demoted him from a salaried employee earning commissions to an hourly-wage employee. *Hoffman v. MCA, Inc.,* 144 F.3d 1117, 1121 (7th Cir. 1998).

> Sometimes, remarks by an employer can be direct proof of discriminatory intent. But remarks at work that are based on age stereotypes do not invariably prove that age played a part in a particular employment decision. The plaintiff must show that the employer actually relied on [his] age in making its decision.

*Id.* (quotation omitted).

If Blasi actually made the remark about a "younger, faster man," he obviously

would have been engaging in an inappropriate stereotype—younger men move more quickly than older men (an assumption belied by Blasi's own experience with route drivers older than Weiss). (*See* R. 49, Weiss Ex. L, Blasi Dep. at 93–94 and corresponding attachments.) But Weiss cannot show that Blasi relied on the alleged stereotype when he decided to remove Weiss from Route 59 more than thirty days later. It is especially noteworthy that during this intervening time period Blasi received further information from Carbone that indicated Weiss was too disorganized and slow to operate Route 59. Thus, all of the evidence shows that Blasi demoted Weiss because Weiss was slow: he was a "slower man" as opposed to a "faster man." For this reason, Weiss cannot make out a direct case of age discrimination and we grant Turano's summary judgment motion as to this claim.

## CONCLUSION

For the reasons stated above, we grant Turano's motion for summary judgment, (R. 38–1), in its entirety. We also grant Turano's motion to file a reply brief to plaintiff's response to defendant's statement of facts. (R. 50–1.) Lastly, given our resolution of the case, we deny Turano's motion to strike portions of Weiss' affidavit as moot. (R. 52–1.) We instruct the Clerk of Court to enter final judgment pursuant to federal Rule of Civil Procedure 58.