**Rita Ione TERRY, Plaintiff–Appellant,**

v.

**SEDGWICK, DETERT, MORAN & ARNOLD, Defendant–Appellee.**

No. 02–2879.

United States Court of Appeals, Seventh Circuit.

Submitted March 11, 2003.*

Decided April 2, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before EASTERBROOK, ROVNER, and EVANS, Circuit Judges.

ORDER

Rita Ione Terry worked for six years as a legal secretary at Sedgwick, Detert,

Moran & Arnold. Sedgwick fired Terry after a lengthy internal investigation revealed that she failed to pick up from the firm's mailroom an important Federal Express package that needed to be delivered overnight. Terry, who is African–American, then sued the firm, claiming that she was a victim of race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The district court granted summary judgment for Sedgwick, and we affirm.

Beginning in 1998, Terry's duties at Sedgwick included taking downstairs for shipment mail or packages brought to the firm's mailroom between 5:30 and 6:00 in the evening. She performed this duty without incident until one evening in October 1999 when she failed to mail several certified letters. Upon learning the following morning of the unmailed letters, the firm's office manager, Jena Neilser, sent Terry a memorandum reiterating that it was her responsibility to ensure that mail brought to the mailroom between 5:30 and 6:00 p.m. was sent:

> It is your responsibility to make sure that any mail that is in office services at the time that Mayra leaves at 5:30 and the time that you leave at 6:00 is metered and put in the mail, any federal express packages are placed in the federal express box downstairs for pickup, any outgoing faxes are sent and any incoming faxes are distributed. You should be checking all of the bins in Office Services right before you leave at 6:00. If you are working on documents for an attorney during this time, it does not relieve you of the responsibility of checking Office Services for any of the above mentioned items before you leave.

A month later, on November 30, a Federal Express package containing an affidavit that needed to be filed the next day in an Indiana court was left in the firm's mailroom overnight. After enlisting a courier to deliver the affidavit at considerable expense, the attorney sending the package asked Neisler to find out who was responsible for the mishap. The attorney's secretary who prepared the package, Marguerite Sauser, told Neisler that she put the package in the mailroom at 5:45, expecting Terry to take it downstairs for delivery. Terry, however, said that she checked the mailroom after that time and saw no package there. Further, she told Neisler that she did not leave the office that day until after six o'clock. Unfortunately for Terry, security videotapes, key card records, copier usage reports, and employee statements seemed to support Sauser's version of events and contradict Terry's. Notably, the security tape showed Terry leaving for the day *before* her scheduled departure time of 6 o'clock. After a week-long investigation, Neisler concluded that Terry was responsible for the package not being sent, and in addition, that she was untruthful about what time she checked the mailroom and what time she left the office that evening.

Sedgwick terminated Terry's employment on December 7, 1999. After receiving a right-to-sue letter from the EEOC, Terry, with the assistance of counsel, filed this Title VII suit alleging that her termination was race-based. The district court assumed for summary judgment purposes that Terry met her burden of establishing a prima facie case of race discrimination under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). But because she failed to demonstrate that the firm's justifications for her termination were pretextual, the district court granted summary judgment for Sedgwick.

On appeal Terry maintains that Sedgwick blamed her for the Federal Express

mishap rather than Sauser because she is black and Sauser is white. To this end, Terry devotes most of her brief to disputing Sedgwick's conclusion that she, not Sauser, was at fault for the unsent package. She also points to other instances in which, she says, Sedgwick treated white secretaries more favorably. Sedgwick, in turn, argues that Terry has not established a prima facie case of racial discrimination, much less shown that its proffered reason for the termination was pretextual.

Under the *McDonnell Douglas* method, Terry must first make out a prima facie case of race discrimination by showing that (1) she was a member of a protected class; (2) at the time of her discharge she was meeting Sedgwick's legitimate expectations; (3) she was discharged; and (4) Sedgwick treated similarly situated employees not in the protected class more favorably. *See McDonnell Douglas*, 411 U.S. at 802; *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545 (7th Cir. 2002); *see also Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1178 (7th Cir.1997) (emphasizing that the "prima facie case under *McDonnell Douglas* must be established and not merely incanted."). There is no dispute here that Terry satisfied the first and third elements. However, Sedgwick contends, as it did in the district court, that Terry failed to meet her burden on the second and fourth elements.

Arguably, Terry has presented enough evidence refuting Sedgwick's assertion that she failed to fulfill her mailroom duties on November 30 to create a genuine issue of fact on the legitimate expectations prong. But she has not come forward with sufficient evidence demonstrating that similarly situated employees outside the protected class were treated more favorably. Employees are "similarly situated" if their performance, qualifications, and conduct are substantially similar.

*Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir.2002); *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir.2000). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, *and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.*" *Peele*, 288 F.3d at 330 (quoting *Radue*, 219 F.3d at 617–18) (emphasis added).

Terry failed to demonstrate that Sedgwick treated her more harshly than non-African-American employees who engaged in comparable conduct. Terry does point to an incident in September 1999 involving Mayra Colon–the secretary who typically brought the firm's mail downstairs for delivery before 5:30 p.m.–but that situation is distinguishable. One evening Colon, who is Hispanic, told Terry that she would be working late and would check the mailroom for any overnight Federal Express packages. Colon, however, forgot to do so. Confronted the following day, Colon admitted her mistake and apologized; Neisler warned her not to repeat the mistake, and there is no evidence that Colon had any subsequent incidents with the mail. By contrast, Terry had already received one warning prior to the Federal Express incident on November 30, denied responsibility for the incident; and, the firm found, lied about what time she checked the mailroom and what time she left the office that evening.

Terry also points to evidence that several Caucasian secretaries, including Sauser, falsely recorded their departure times on their time-sheets but were not fired. But those situations are similarly distinguishable because Terry was not terminated solely because she lied about leaving a few minutes early. Because Terry has not satisfied her burden of showing that similarly

situated employees were treated more favorably than she, her prima facie case fails.

Finally, even if we were to assume, as did the district court, that Terry made a prima facie case of race discrimination, she failed to demonstrate that the firm's proffered reasons for her discharge were pretextual. Pretext requires more than evidence that Sedgwick fired Terry for incorrect or ill-considered reasons; Terry must show that Sedgwick did not honestly believe the reasons it gave for terminating her. *Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 744 (7th Cir.2002); *Kariotis v. Navistar Int'l Trans. Corp.*, 131 F.3d 672, 677 (7th Cir.1997). There is no evidence here· that Sedgwick did not honestly believe, based on its extensive investigation, that Terry was at fault for the package not being sent, and then lied about it.

For these reasons, we AFFIRM the district court's judgment. We DENY as unnecessary Sedgwick's motion to strike portions of Terry's brief and appendix.